UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARC LOPILATO and ALFREDO, ) <br> LOPILATO, ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> Officer MICHAEL LANK, Officer GLENN ) <br> NIX, Officer ERROL LANE, Canton Police ) <br> Chief PETER BRIGHT, and the TOWN OF ) <br> CANTON, ) <br>     Defendants, ) <br> ) | C.A. NO. 05-10012-NG |

**PLAINTIFFS' PROPOSED JURY INSTRUCTIONS**

The plaintiffs submit the following as their proposed jury instructions:

1. **42 U.S.C. § 1983** – Civil Rights Act. The plaintiffs have filed this action, in part, under a provision of the United States Code, Title 42, section 1983, which gives a person the right to bring a lawsuit, and seek redress by way of money damages, for a violation of a constitutional right by a police officer acting in an official capacity. In order to prevail on this claim, the plaintiffs must prove two things:

   > 1. that the defendants acted under color of state law; and
   > 2. that the defendants deprived the plaintiffs of one or more constitutional rights.[1]

2. **Fourth Amendment** – The plaintiffs claim that the defendants violated their rights under the Fourth Amendment to the United States Constitution. The Fourth Amendment reads:

   > The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.

3. **Color of Law** – "Acting under color of law" simply means acting in one's capaTown as a police officer. There is no dispute that the defendants in this case were acting under color of law at the time of this incident, and you must find this element to have been established.

4. **No Specific Intent Required –** It is not necessary in a case like this to find that the defendants had any specific intent to deprive the plaintiffs of their constitutional

---

[1] 42 U.S.C. § 1983; *Gomez v. Toledo*, 446 U.S. 635 (1980); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Monroe v. Pape*, 365 U.S. 167 (1961).

rights, or that they acted with malice or ill will, in order to find for the plaintiffs. The plaintiffs are entitled to relief if a defendant acted in a manner which then resulted in a violation of their constitutional rights. Whether any of the officers acted with subjective good faith is irrelevant.[2]

You should also take into account all of the facts and circumstances which were known, or which should have been known, by the defendants when you are assessing their liability to the plaintiffs. The question you must answer is whether in the face of such facts and circumstances a given defendant treated a plaintiff unreasonably and violated his constitutional rights, which shall be defined for you.[3]

5. **Probable cause**. Probable cause for an arrest exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators.[4] Whether probable cause exists depend on the totality of the circumstances.[5]

6. **Unlawful Seizure.** The Fourth Amendment prohibits unreasonable seizures and this protection extends to brief investigatory stops of persons or vehicles that fall short of a traditional arrest.[6] When police officers detain an individual, their actions must be supported by a reasonable suspicion that criminal activity may be afoot.[7] To determine if there was a reasonable suspicion in this case, you must determine, under the totality of the circumstances, whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing.[8] In determining the reasonableness of the seizure, you must determine whether the officers' actions were justified at their inception, and whether they were reasonably related in scope to the circumstances which justified the seizure in the first place.[9]

7. **Unreasonable Force.** Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. The proper application of the reasonableness test requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. The reasonableness inquiry is an objective one: the question is whether the officers' actions are

---

[2] *Monroe v. Pape*, 365 U.S. 167 (1967); *Hudson v. New York Town*, 271 F.3d 62 (2d Cir. 2001) (reversing judgment for defendants where court instructed jury that an intentional violation of constitutional rights was required.)
[3] *Roberts v. Hollocher,* 664 F.2d 200 (8th Cir. 1981).
[4] *Beck v. Ohio*, 379 U.S. 89, 91 (1964).
[5] *Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 10 (1st Cir. 2004).
[6] *United States v. Arvizu*, 534 U.S. 266, 272 (2002), *citing Terry* v. *Ohio*, 392 U.S. 1, 9 (1968).
[7] *See Arvizu*, 534 U.S. at 273.
[8] *Id.*
[9] *United States v. Sharpe*, 470 U.S. 675, 682 (1985), *quoting*, *Terry*, 392 U.S. at 20.

objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.[10]

8. **First Amendment**—The plaintiffs claim that the defendants violated their rights under the First Amendment to the United States Constitution by retaliating against them for filing an internal affairs complaint. The First Amendment reads:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

9. **First Amendment – Retaliation—**The plaintiffs will prevail on a §1983 claim based on a violation of his First Amendment rights when they show, by a preponderance of the evidence, that 1) they engaged in a constitutionally protected activity and that 2) the defendants' retaliatory conduct was substantially motivated by that protected activity.[11] As a matter of law, I instruct you that the plaintiffs' filing of an internal affairs complaint satisfies the first of the two elements I just listed. Moreover, the filing of criminal charges or the making of an arrest would be considered retaliatory conduct. Thus, the only question before you as to the §1983 claim pertains to the defendants' state of mind at the time they filed they acted, i.e. were they substantially motivated by a desire to retaliate.

10. **Substantially Motivated – Proof—**The plaintiffs can prove that the defendants' conduct was substantially motivated by the exercise of First Amendment rights by both direct and indirect, i.e. circumstantial evidence. Direct evidence might include documentary or verbal evidence as to the reasons for the retaliatory action. However, a retaliatory state of mind typically is not susceptible to proof by direct evidence.[12] Therefore, you may look to indirect or circumstantial evidence, which is evidence that can be inferred from the facts of the case, such as the closeness in time of the defendants' retaliatory conduct to the plaintiffs' First Amendment activity. Indeed, closeness in time alone is sufficient to show the causal connection between the plaintiffs' speech and the retaliatory action taken against them.[13] As a matter of law, I instruct you that, if you find sufficient circumstantial evidence that the seeking of the criminal charges or the February, 2003 arrest was substantially motivated by the plaintiffs' internal complaint, you must find for the plaintiffs on the First Amendment retaliation claim.

11. **Massachusetts Civil Rights Act.** If you find that the defendants violated any of the plaintiffs' constitutional rights, and they did so with threats, intimidation, or coercion, then you must find the defendants liable for a violation of the Massachusetts Civil Rights Act.

---

[10] *Graham v. Connor*, 490 U.S. 386, 396 (1989)
[11] *Mt. Healthy City Sch. Dist. Bd. of Education v. Doyle,* 429 U.S. 274, 287 (1977).
[12] *Powell v. Alexander*, 391 F.3d 1, 17 (1st Cir. 2004).
[13] *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

3

12. **Credibility of Witnesses.**  There was quite a bit of testimony from different police officers in this case.  The testimony of a law enforcement officer should be considered by you just as any other evidence in this case, and in evaluating his credibility you should use the same guidelines which you apply to the testimony of any witness.  You should recall their demeanor on the stand, their manner of testifying, the substance of their testimony, and you should weigh and balance it just as carefully as you would the testimony of any other witness.  You should not give either greater or lesser credence to the testimony of a witness merely because he is a law enforcement officer.[14]

13. **Bias of Officials as Witnesses**.  Several of the witnesses are still employed by the Town of Canton and hence are interested witnesses in the outcome of this case.  Their relationship with and employment by the Town of Canton are matters for you to consider, together with your observation of the witnesses and the testimony you have heard, in determining whether they are biased in favor of the defendants, and what weight you will give to their testimony.

14. **42 U.S.C. §1983—Supervisory Liability.**  Some of the Defendants in this case are supervisory officers who may, or may not have been present when some of the alleged incidents took place.  Under §1983, supervisors are liable for a violation of the plaintiffs' rights if their own conduct was the proximate cause of the violation.[15]  A supervisor violates a plaintiffs' constitutional rights if he:

    i. Does an affirmative act or acts
    ii. Participates or acquiesces in another's affirmative act or acts[16], or
    iii. Fails to do something which he is required to do, and that act or omission causes the violation of which the Plaintiffs complain.

    Personal participation in the immediate act or acts which violated the plaintiffs' rights is not required.[17]  It is sufficient if the supervisor sets in motion a series of acts by others, or knowingly refuses to terminate a series of acts by others, which he knows or reasonably should know would cause others to inflict the constitutional injury.

15. **Municipal Liability -- Generally.** The Town of Canton is a defendant in this case and is liable for violations of the constitutional rights of the plaintiff, if they were caused by policies or customs of the Town, which demonstrated a deliberate indifference to the rights of people in the plaintiffs' position.  The Town is not liable for each act committed by their employees, but is liable for those acts which are taken pursuant to, or caused by, their policies or customs.

---

[14] *Roberts v. Hollocher*, 664 F.2d 200 (8th Cir. 1981); *Darbin v. Nourse*, 664 F.2d 1109 (9th Cir. 1981); *Bush v. United States*, 375 F.2d 602, 605 (D.C. Cir. 1967).
[15] *Mackinney v. Nielsen*, 69 F.3d 1002, 1008 (9th Cir. 1995)
[16] *Baker v. Monroe Township*, 50 F.3d 1186, 1193-94 (3d Cir. 1995)
[17] *Wilks v. Young*, 897 F.2d 896, 898 (7th Cir. 1990)

    It is not required that a policy be officially adopted by the Town's lawmakers for the Town to be held liable. A policy can be set by those to whom the responsibility for developing the Town's policy in the area in question has been delegated. Moreover, if there is persistent and widespread practice which has gained the force of custom, which practice was known to, or should have been known to, the appropriate policymakers of the Town, and which was tolerated by those policymakers, the Town will be liable for acts taken pursuant to that custom.

    If you find that any of the individual defendants violated the plaintiffs' rights under the Fourth Amendment, and that the violation was caused by, or committed pursuant to, a policy or custom of the Town of Canton and that the Town has demonstrated deliberate indifference to the rights of the people in the plaintiffs' position, you should find the Town liable for those violations.[18]

**16. Municipal Liability – Unwritten Policy or Custom.** Liability against a municipality may be based upon the existence of a custom "found in 'persistent and widespread … practices of [municipal] officials [which] [a]lthough not authorized by written law, [are] so permanent and well settled as to [have] the force of law.'"[19]

    You may find that such a custom existed if there was a practice so well-settled and widespread that the policymaking officials of the Town either knew of it, or should have known of it. You may find that the policymaking officials of the Town should have known of the officers' practices when the practices were so "widespread or flagrant that in the proper exercise of [their] official responsibilities the [municipal policymakers] should have known of them."[20]

**17. Municipal Liability—Single incident of misconduct.** The Town can be liable for a single incident of misconduct if it is so obvious that a custom or policy will result in a constitutional violation that the failure to change this custom or policy shows a deliberate indifference to constitutional rights.[21] Moreover, you may consider the fact that multiple officers are alleged by the plaintiffs to have violated their constitutional rights in weighing whether a custom and policy of violating constitutional rights existed within the Police Department. [22]

**18. Municipal Liability- Serial Violations.** You may consider the fact that multiple officers are alleged by the plaintiffs to have violated his constitutional rights on

---

[18] *Monell v. Dep't of Soc. Servs*, 436 U.S. 658 (1978); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Bordano v. McLeod*, 871 F.2d 1151 (1st Cir. 1989) (policy of breaking down doors without warrant to apprehend felons); *Weber v. Dell*, 804 F.2d 796 (2d Cir. 1986) (strip search policy); *Mary Beth G. v. Town of Chicago*, 723 F.2d 1263 (7th Cir. 1984) (same). Proof of "deliberate indifference" may not be required, where plaintiff claims that an affirmative unconstitutional policy of the Town has caused the constitutional violation. *See Young v. Town of Little Rock*, 249 F.3d 730, 736 (8th Cir. 2001) (where Town housed its prisoners in County jail, and where strip searching was routine procedure at jail, it was not unfair to attribute to the Town the policies routinely used by the County jail).

[19] *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987), *quoting Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978), *citing and quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970).

[20] *Bordanaro v. McLeod*, 871 F.2d 1151, 1157 (1st Cir. 1989), quoting *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987).

[21] *Town of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)

[22] *Kibbe v. Springfield*, 777 F.2d 801, 805 (1st Cir. 1985)

multiple occasions in weighing whether a custom and policy of violating constitutional rights existed within the Police Department.[23]

19. **Municipal Liability—Custom vs. Policy.** A policy and a custom are two distinct terms when examined with regards to the Town's liability. A policy comes into existence because of actions or inaction by policymakers. On the other hand, a custom develops from the bottom up. Thus a municipality can be liable for its policies, or lack thereof, as well as its acquiescence in the unconstitutional conduct of its rank and file employees.[24]

20. **Municipal Liability— Failure to Investigate.** A municipality can be liable if its police department has a custom or policy of failing to investigate constitutional violations committed by its officers. To recover under this theory, the plaintiffs must show that unconstitutional conduct of the Town's employees was widespread and persistent, that the Town showed deliberate indifference to the conduct or tacitly authorized it, and the failure to investigate resulted in constitutional injury.[25]

21. **Compensatory Damages**—The fact that the plaintiffs' rights are found to have been violated, as a matter of law entitles him to actual damages. Therefore, if you decide for the plaintiffs on the issue of liability, you must then fix the amount of money damages that will reasonably and fairly compensate him for any harm which the wrongful conduct of the defendants was a substantial factor in bringing about.
   Among the elements of injury and harm which you should consider are:

   > 1. Any lost wages resulting from the incident, past and future
   > 2. Any physical harm to the plaintiffs during and after the incident, including ill health, physical pain, disability, or discomfort.
   > 3. Any emotional and mental harm to the plaintiffs during and after the incident, including fear, humiliation, and mental anguish, and any emotional harm, fear, or mental anguish that plaintiffswill, with reasonable certainty, suffer in the future. This measure of damages is commonly known as emotional distress damages.

22. **Emotional Distress Damages—Specifically.** In determining the plaintiffs' damages for emotional distress, you are to fairly compensate them for past, present and future pain and suffering associated with his emotional distress including compensation for mental anguish, humiliation, nervous shock, emotional disturbance, fright, terror, alarm and anxiety. You may include in your award any amount that you feel will fairly compensate the plaintiffs for deterioration of their health, for medical psychiatric and counseling expenses, and for impairment of their earning capacity resulting from the emotional distress.

---

[23] *Kibbe v. Springfield*, 777 F.2d 801, 805 (1st Cir. 1985)
[24] *Britton v. Maloney*, 901 F. Supp 444, 450 (D. Mass 1995)
[25] *Bell v. Fowler*, 99 F.3d 262, 269 (8th Cir. 1996)

23. **Punitive Damages**—You must also decide whether the plaintiffs are entitled to the award of any punitive damages. The function of punitive damages is to punish the defendants for malicious conduct and to deter similar conduct by others. Whether you decide to award any punitive damages should be based on whether you find that the defendants acted willfully, deliberately, maliciously, or with reckless disregard of the plaintiffs' constitutional rights. If you find that they have done one of those things, then you should award punitive damages. Punitive damages may be awarded even if the violation of plaintiffs' rights resulted in only nominal compensatory damages. That is, even if the plaintiffs can show no damages or other injury as a result of the defendants' actions, if these actions were deliberate, willful, or made with reckless disregard of plaintiffs' rights, punitive damages are appropriate.[26]

24. **Interest**—If you have determined that compensatory damages should be awarded to the plaintiffs, you must also decide whether to award interest. This lawsuit was some time ago, and you may award interest on the sum which you have decided is an appropriate compensatory damage award, from that time to the present. Whether you do award interest should depend upon whether you conclude that interest is necessary to compensate the plaintiffs fully for any injury suffered, bearing in mind that the plaintiffs have not had the use of the damages you award during the time this litigation has been pending. If you do award interest, the actual sum will be computed by the clerk at the rate provided by the law.[27]

Respectfully Submitted
Plaintiffs Marc and Alfredo Lopilato
By their attorneys,

//s// Michael Tumposky
Stephen Hrones
BBO # 242860
Jessica D. Hedges
BBO # 645847
Michael Tumposky
BBO No. 660618
Hrones, Garrity& Hedges
Lewis Wharf – Bay 232
Boston, MA  02110-3927
(617) 227-4019

---

[26] *Smith v. Wade*, 461 U.S. 30 (1983); *Adickes v. S.H. Kress & Co.*, 389 U.S. 144, 234 (1970) (Brennan, J., concurring); *Cochetti v. Desmond*, 572 F.2d 102, 105-06 (3d Cir. 1978); *Guzman v. Western State Bank*, 540 F.2d 948, 953 (8th Cir. 1976); *Stolberg v. Board of Trustees*, 474 F.2d 485 (2d Cir. 1973); *Batista v. Weir*, 340 F.2d 74 (3d Cir. 1965).

[27] *Furtado v. Bishop*, 604 F.2d 80 (1st Cir. 1980).

**CERTIFICATE OF SERVICE**

  I, Michael Tumposky, hereby certify that, on this the 15th day of October, 2007, I served a copy of Plaintiffs' Request for Jury Instructions, where unable to do so electronically, by first-class, postage prepaid, to all attorneys of record.

                <u>//s// Michael Tumposky</u>
                Michael Tumposky