UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARC LOPILATO and ALFREDO, LOPILATO,<br>Plaintiffs<br><br>v.<br><br>Officer MICHAEL LANK, Officer GLENN NIX, Officer ERROL LANE, Canton Police Chief PETER BRIGHT, and the TOWN OF CANTON,<br>   Defendants, | C.A. NO. 05-10012 NG |

## DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PLAINTIFF'S ALLEGED CITATIONS SUBSEQUENT TO AUGUST 30, 2002

Now come the defendant and hereby move this Honorable Court to preclude any and all evidence regarding citations from the Canton Police Department to the plaintiffs, Marc Lopilato and Alfredo Lopilato subsequent to August 30, 2002.

In the instant mater, the plaintiffs have claimed in their deposition testimony that they were stopped numerous times by the Canton police department since August 30, 2002, the date of the first incident which is the subject of the plaintiffs' complaint. (Dep. Marc Lopilato, p. 17, L 21; Dep. Alfredo Lopilato, p. 75, L 14, attached hereto as Exhibit "A.") However, despite numerous requests, as well as the Canton police department's review of records, there is evidence of only a few stops, and no evidence of stops or citations for either plaintiff whatsoever issued by any of the defendants.[1] Therefore, the plaintiffs should be precluded from making such statements, as they are prejudicial to the defendants.

Further, pursuant to M.G.L. c. 233, § 21, the record of an individual's conviction for a

---

[1] There is evidence that Alfredo Lopilato was cited for speeding by Patrolman Michael O'brien on July 7, 2004 in Canton. There is evidence that Marc Lopilato was cited for an improper turn by Sgt. Paul DiGiampietro on August 28, 2004, and on November 19, 2003, by Patrolman Donald Wolffe, both in Canton.

traffic violation upon which a fine was imposed shall not be shown for such purpose unless he has been convicted or another crime or crimes within five years of the time of testifying. M.G.L. c. 233, § 21. *See also* Reed v. Canada Dry Corporation, 5 Mass.App.Ct. 164 (1977). The plaintiffs have no such criminal record, and the introduction of the plaintiffs' claims of alleged traffic stops by Canton police officers would be unfairly prejudicial to the defendants.

WHEREFORE, the defendants move to exclude any and all references to plaintiffs' alleged citations by Canton police officers after August 30, 2002. In the alternative, the defendants move to admit into evidence the plaintiffs' nine (9) motor vehicle violations preceding August 30, 2002.

Defendants,
by their attorneys,

/s/ Valerie A. McCormack
Douglas I. Louison BBO# 545191
Valerie A. McCormack, BBO# 661460
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA 02110
(617) 439-0305

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of November, 2007, I caused the foregoing to be served electronically on all parties of record.

/s/ Valerie A. McCormack
Valerie A. McCormack

EXIHIBIT "A"

Page 1

Volume I
Pages 1-80

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
C.A. NO. 05-10012 NG

MARC LOPILATO and            :
ALFREDO LOPILATO,            :
         Plaintiffs,         :
                             :
vs.                          :
                             :
OFFICER MICHAEL LANK,        :
OFFICER ERROL LANE, CANTON   :
POLICE CHIEF PETER BRIGHT,   :
AND THE TOWN OF CANTON,      :
         Defendants.         :

DEPOSITION of MARC LOPILATO, taken on behalf of the Defendants, pursuant to the applicable provisions of the Massachusetts Rules of Federal Procedure, before Barbara M. Montijo, a Registered Professional Reporter and Notary Public within and for the Commonwealth of Massachusetts, at the offices of Merrick, Louison & Costello, LLP, 67 Batterymarch Street, Boston, Massachusetts, on October 12, 2006, commencing at 1:00 p.m.

DUNN & GOUDREAU
COURT REPORTING SERVICE, INC.
One State Street
Boston, MA 02109
(617) 742-6900

Page 2

1  APPEARANCES:
2  JESSICA D. HEDGES, ESQUIRE
   HRONES, GARRITY HEDGES, LLP
3  LEWIS WHARF - BAY 232
   BOSTON, MA 02110
4  TELEPHONE NO. (617) 227-4019
   FOR: MARC LOPILATO and
5      ALFREDO LOPILATO
6  JAMES W. SIMPSON, JR., ESQUIRE
   MERRICK, LOUISON & COSTELLO, LLP
7  67 BATTERYMARCH STREET
   BOSTON, MA 02110
8  TELEPHONE NO. (617) 439-0305
   FOR: OFFICER MICHAEL LANK, OFFICER ERROL LANE,
9      CANTON POLICE CHIEF PETER BRIGHT, AND THE
       TOWN OF CANTON
10
   ALSO PRESENT:
11
   OFFICER MICHAEL LANK
12 ALFREDO LOPILATO
13
14
15
16
17
18
19
20
21
22
23
24

Page 3

1                  I N D E X
2
   WITNESS                              PAGE
3
   MARC LOPILATO
4
       Examination by Mr. Simpson . . . . . . . 4
5      Examination by Ms. Hedges . . . . . . . 77
6
7                  E X H I B I T S
8  NO.   DESCRIPTION                    PAGE
   (Defendants)
9
10  1    Photograph . . . . . . . . . . . .  48
11  2    Photograph . . . . . . . . . . . .  48
12
       *Reporter's Note:
13
       (Exhibits were retained by Attorney Simpson)
14
15
16
17
18
19
20
21
22
23
24

Page 4

1       (DEPOSITION COMMENCED AT 1:05 P.M.)
2       IT IS HEREBY STIPULATED AND AGREED by and
3    between counsel for the respective parties that
4    the Witness will read and sign the deposition
5    transcript under the pains and penalties of
6    perjury; that the reading and signing is deemed
7    waived if not accomplished within 30 days of
8    transcript delivery; and that the sealing,
9    filing, and certification of the deposition
10   transcript are waived.
11      It is further stipulated and agreed that
12   all objections, except objections to the form of
13   the questions, and motions to strike will be
14   reserved until the time of trial or pretrial
15   hearing.
16           **********************
17            MARC LOPILATO
18      The deponent, having been satisfactorily
19   identified and duly sworn by the Notary Public,
20   deposes and testifies as follows:
21         EXAMINATION BY MR. SIMPSON
22   Q.  Good afternoon, Mr. Lopilato. Again, I'm Jim
23      Simpson, representing the defendants. You were
24      here for my spiel about us talking over each

Page 17

1  A. He drove.
2  Q. What time did you get to Center Field's?
3  A. 8:30, 9:00.
4  Q. Did you meet anybody else there at Center
5     Field's?
6  A. No. James' girlfriend was there.
7  Q. What was her name?
8  A. Julie Finkston.
9  Q. Are they still together?
10 A. They actually just got married.
11 Q. Just to back up. Just by way of background,
12    have you ever been arrested before?
13 A. Other than this, no.
14 Q. No prior arrests?
15 A. No.
16 Q. Just civil, motor vehicle traffic stuff?
17 A. I'm a Step 9 on my driving. I never even get
18    any tickets.
19 Q. So, you haven't gotten any tickets that you know
20    of?
21 A. Other than Canton. I got eight right after the
22    trial in Canton, but not one of them stuck.
23    Every time I went to court, they let them go.
24 Q. What were they for?

Page 18

1  A. Silly things. One of the times I was on my
2     motorcycle, I was bearing off on Randolph
3     Street. I stopped with another guy who was
4     right behind me on a motorcycle. Officer
5     Connors pulled me over and he said, "Guys, I'm
6     not going to give you a ticket. I'm just going
7     to make it look like I'm going to give you a
8     hard time." He took my license and registration
9     came back and gave me, I believe it was, a 250
10    or $175 ticket. And the guy behind me, he
11    didn't give a ticket to. When I went to court,
12    they dismissed it.
13 Q. Do you know who the guy was behind you?
14 A. Yes, Scott Graham.
15 Q. So, he gave you a ticket and not Scott Graham?
16 A. Right.
17 Q. What was the ticket for, speeding?
18 A. No, just taking a right-hand turn too early. I
19    was bearing off to take a right.
20 Q. What year was that?
21 A. 2003. Right after the trial. It was right
22    after I was found not guilty. I got several
23    tickets after that.
24 Q. Did you keep any copies of the citations that

Page 19

1     you were issued?
2  A. I believe I do have them at the office, yes.
3  Q. Can you provide those to your attorney?
4  A. Absolutely, if I can find them.
5  Q. So, all of them have been dismissed?
6  A. Every one of them.
7  Q. Were they dismissed at the clerk's level or did
8     you have to appeal it to a judge?
9  A. No, at the clerk's level.
10 Q. So, other than this incident when you were
11    arrested, no other arrests that you know of?
12 A. No.
13 Q. So, jumping back to Center Field's. You're
14    there with Mr. Young and you meet up with his
15    girlfriend there?
16 A. Yes.
17 Q. This is around 9:00. 9, 9:30, or 8, what time
18    was it?
19 A. It was around 8:30, 9:00.
20 Q. And Center Field's is a typical kind of small
21    town bar, everyone goes there?
22 A. Yeah.
23 Q. Townies, a lot of people?
24 A. Yeah, I guess.

Page 20

1  Q. Did you see other people there that you knew
2     that night besides who you were with?
3  A. I did, yes.
4  Q. Who else did you see that you knew?
5  A. I saw Chris DiPietro, Peter Barsanti, the
6     bartender at the time. James, his girlfriend
7     Julie, and I think she was with a couple of her
8     friends.
9  Q. How long did you stay at Center Field's?
10 A. Not long. We were just actually picking her up
11    and we were leaving, but we ended up staying for
12    one drink and I didn't even finish my drink.
13 Q. What was that, a beer?
14 A. Yes.
15 Q. So far you've had two beers and this one you had
16    at Center Field's?
17 A. Half a beer at Center Field's.
18 Q. How long were you at Center Field's for?
19 A. Probably about half an hour, maybe.
20 Q. What happened? Why did you leave?
21 A. Timmy Albert called James Young's girlfriend
22    a...
23 Q. You can say it.
24 A. A cunt. James started arguing back and forth

## Page 1

Volume I
Pages 1-83

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
C.A. NO. 05-10012 NG

MARC LOPILATO and            :
ALFREDO LOPILATO,            :
        Plaintiffs,          :
                             :
vs.                          :
                             :
OFFICER MICHAEL LANK,        :
OFFICER ERROL LANE, CANTON   :
POLICE CHIEF PETER BRIGHT,   :
AND THE TOWN OF CANTON,      :
        Defendants.          :

    DEPOSITION of ALFREDO LOPILATO, taken on
behalf of the Defendants, pursuant to the
applicable provisions of the Massachusetts Rules
of Federal Procedure, before Barbara M. Montijo,
a Registered Professional Reporter and Notary
Public within and for the Commonwealth of
Massachusetts, at the offices of Merrick,
Louison & Costello, LLP, 67 Batterymarch Street,
Boston, Massachusetts, on October 12, 2006,
commencing at 10:30 a.m.

DUNN & GOUDREAU
COURT REPORTING SERVICE, INC.
One State Street
Boston, MA  02109
(617) 742-6900

## Page 2

1  APPEARANCES:
2  JESSICA D. HEDGES, ESQUIRE
   HRONES, GARRITY & HEDGES, LLP
3  LEWIS WHARF - BAY 232
   BOSTON, MA  02110
4  TELEPHONE NO. (617) 227-4019
   FOR:  MARC LOPILATO and
5      ALFREDO LOPILATO
6  JAMES W. SIMPSON, JR., ESQUIRE
   MERRICK, LOUISON & COSTELLO, LLP
7  67 BATTERYMARCH STREET
   BOSTON, MA  02110
8  TELEPHONE NO. (617) 439-0305
   FOR:  OFFICER MICHAEL LANK, OFFICER ERROL LANE,
9      CANTON POLICE CHIEF PETER BRIGHT, AND THE
       TOWN OF CANTON
10
   ALSO PRESENT:
11
   OFFICER MICHAEL LANK
12 MARC LOPILATO
13
14
15
16
17
18
19
20
21
22
23
24

## Page 3

INDEX

WITNESS                                    PAGE

ALFREDO LOPILATO

    Examination by Mr. Simpson . . . . . . .  4
    Examination by Ms. Hedges . . . . . . . 78
    Re-Examination by Mr. Simpson . . . . . 80

         EXHIBITS
NO.   DESCRIPTION                          PAGE
(Defendants)

1     Diagram . . . . . . . . . . . . . . . 77


*Reporter's Note:

(Exhibit retained by Attorney Simpson)

## Page 4

1       (DEPOSITION COMMENCED AT 10:40 A.M.)
2       IT IS HEREBY STIPULATED AND AGREED by and
3  between counsel for the respective parties that
4  the Witness will read and sign the deposition
5  transcript under the pains and penalties of
6  perjury; that the reading and signing is deemed
7  waived if not accomplished within 30 days of
8  transcript delivery; and that the sealing,
9  filing, and certification of the deposition
10 transcript are waived.
11     It is further stipulated and agreed that
12 all objections, except objections to the form of
13 the questions, and motions to strike will be
14 reserved until the time of trial or pretrial
15 hearing.
16            ***********************
17            ALFREDO LOPILATO
18     The deponent, having been satisfactorily
19 identified and duly sworn by the Notary Public,
20 deposes and testifies as follows:
21            EXAMINATION BY MR. SIMPSON
22 Q.  Good morning. My name is Attorney Jim Simpson.
23     I represent the defendants in this case.  Have
24     you ever been deposed before?

Page 73

1  Q. Now, as a result of being charged, you had to
2     pay an attorney to represent you, correct?
3  A. Yes.
4  Q. How much money did you have to pay this attorney
5     to represent you through trial?
6  A. 10,000.
7  Q. Have you paid him the entire 10,000 or do you
8     still owe him anything?
9  A. I paid him.
10 Q. Other than the $10,000, how many days off from
11    work did you have to take during the criminal
12    process?
13 A. About seven or eight.
14 Q. And roughly, how much do you charge yourself for
15    a day's work?
16 A. I run the company. So, if I'm not there,
17    they're not producing.
18 Q. So, how much would you calculate the seven or
19    eight days of work would be for lost wages?
20 A. Approximately 2,000 a day.
21 Q. Now, that's money that you would earn or what
22    the company would earn?
23 A. No, what the company would earn.
24 Q. So, if you're not there, the company can still

Page 74

1     go -- people can still work there, correct?
2     Mechanics can still do work, correct?
3  A. At a loss, but yes.
4  Q. Personally, how much would you say I earn to
5     myself, I earn this much per day working for my
6     company?
7  A. Earn or take home?
8  Q. Well, notwithstanding taxes. How much do you
9     count for your work, for your personal work at
10    your business for one day?
11 A. About $2,000 a day.
12        MS. HEDGES: In other words -- can I
13    help?
14        MR. SIMPSON: Yes.
15        MS. HEDGES: In other words, how much
16    money -- by being in court presumably you lost
17    money. How much money did you lose? If you can
18    estimate that, if you have a sense of that by
19    not being there. Did you personally lose?
20 A. My company suffered, but personal, probably
21    $1,500.
22 Q. For the seven or eight days?
23 A. Right.
24 Q. So, approximately $1,500 in lost wages that you

Page 75

1     weren't able to earn because you were in court,
2     correct?
3  A. Right.
4  Q. $10,000 for your legal fees, correct?
5  A. Yes.
6  Q. No medical bills, correct?
7  A. No.
8  Q. Did you suffer any emotional distress as a
9     result of this incident?
10 A. I felt threatened. Every time I drive through
11    Canton I get pulled over.
12 Q. Since this incident, have you been pulled over
13    by the Canton police?
14 A. Six times.
15 Q. Six times by who?
16 A. All different officers.
17 Q. Has Officer Lank ever pulled you over since the
18    incident?
19 A. No.
20 Q. Any citations issued?
21 A. Every time.
22 Q. What were the citations?
23 A. They kept me for over an hour once saying it
24    could be a stolen car, because it had dealer

Page 76

1     plates.
2  Q. Is your brother a car dealer or something?
3  A. I am. Yes, I sell cars as well.
4  Q. So, you have a dealer's license and dealer
5     plates?
6  A. Yes.
7  Q. What were the citations that were issued?
8  A. I don't remember them all, but I know I was
9     pulled over six times.
10 Q. Were you found responsible for any of those
11    citations?
12 A. I was supposed to be in court today for one of
13    them, but I had that postponed, and the others I
14    was held responsible for one of them.
15 Q. Was this like speeding, or a marked lanes
16    violation, or failure to stop or something like
17    that?
18 A. I think it was speeding.
19 Q. So, there's been six citations that you know of
20    that have been issued against you since the
21    incident?
22 A. Yes.
23 Q. When's the last one?
24 A. About four months ago. I try to stay out of